**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**                    **CASE NO.:**
**X**------------------------------------------------------------**X**
DR. ALEXANDER MACGREGOR,

       Plaintiff,

     v.                                                    **JURY DEMANDED**

MILOST GLOBAL, INC., MILOST ADVISORS, LLC,
MANDLA GWADISO, JERRY CHOATE, EGERTON
FORSTER, JAMES KUO, BRIAN K. KISTLER, and
HAROLD MARTIN,

       Defendants.
**X**------------------------------------------------------------**X**

## COMPLAINT

    Plaintiff, DR. ALEXANDER MACGREGOR (hereinafter "Dr. MacGregor" or "Plaintiff"), by and through undersigned counsel, hereby brings suit for damages against Defendants, jointly and severally, pursuant to 28 U.S.C. §1332, and pursuant to 15 U.S. C. § 80b–7 and 18 U.S.C. 1343, as well as, common law fraud, conversion, breach of contract, and civil conspiracy and alleges as follows:

## JURISDICTION AND VENUE

1.    This is an action for damages brought pursuant to 28 U.S.C. §1332 and 15 U.S.C. § 80b-7.

2.    There is complete diversity between the parties.

3.    The jurisdictional amount in controversy exceeds the minimum necessary for diversity jurisdiction because Plaintiff seeks $560,000 in damages.

4.    This Court is vested with original jurisdiction over this dispute pursuant to 28 U.S.C. § 1331 and § 1343.

5.    This Court has supplemental jurisdiction over Plaintiff's state and local law claims that arise out of the same facts and circumstances as the subject federal claims.

6.      Venue is proper and lies in this Court pursuant to 28 U.S.C. §1391(B) because one of the Defendants, Milost Global, Inc., is located in this judicial District.

7.      In a diversity action, venue is proper where any Defendant may be found.

8.      New York's C.P.L.R. § 302(a) allows a court to exercise personal jurisdiction over a non-domiciliary who:

> 1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or
> 2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or
> 3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he
> (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or
> (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or
> 4. owns, uses or possesses any real property situated within the state.

9.      Each individual Defendant is subject to personal jurisdiction pursuant to New York's long arm statute by virtue of their solicitation and conduct of business in New York.

10.     Moreover, Defendants are subject to this Court's jurisdiction pursuant to the federal securities violation alleged herein. *Bilick v. Eagle Elec. Mfg. Co*., 807 F. Supp. 243, 252 (E.D.N.Y. 1992) (Dearie, J.) ("with regard to plaintiffs' federal securities claim the defendants are subject to nationwide service of process.").

## THE PARTIES

11.     At all times material hereto, Plaintiff was and is over the age of 18 years, *sui juris*, and was and is a resident of Toronto, Ontario, Canada.

12.     Upon information and belief, Milost Advisros, LLC was a domestic limited liability corporation duly organized under the laws of the state of New York, which was dissolved on May 1, 2017.

13.     Upon information and belief, Defendant Milost Global, Inc. is a United States private equity firm conducting business in this state from an address at 48 Wall St., 11th Floor, New York, NY 10005.

14.     Hereinafter, Milost Advisors, LLC and Milost Global, Inc. are collectively referred to as "Milost."

15.     Milost is or was the alter ego of each of the individual Defendants, jointly and severally.

16.     Upon information and belief, the individual Defendants comingled the assets of Milost with their personal assets.

17.     Upon information and belief, Defendant Egerton Forster resides in California.

18.     Defendant Forster is/was Chief Executive Officer of Milost Global.

19.     Upon information and belief, Defendant Kistler is a resident of Florida.

20.     Defendant Kistler was the President and sole officer and director of KMRB II Acquisition Corp., the "shell corporation" that became Milost Acquisition Corp.

21.     Upon information and belief, Defendant Mandla Gwadiso resides in Virginia.

22.     Defendant Gwadiso is/was the "Founder & Chairman" of Milost Advisors.

23.     Defendant Gwadiso is/was the Chairman/Chief Executive Officer of Milost Global.

24.     Upon information and belief, Defendant Jerry Choate resides in Alabama.

25.     Defendant Choate is the "Vice Chairman & CEO" of Milost Advisors.

26.     Defendant Choate was designated as the recipient of all notices pursuant to the contract between Milost Advisors and Dr. MacGregor.

27.     Upon information and belief, Defendant James Kuo resides in California.

3

28.     Defendant Kuo is/was co-founder and Chief Investment Officer for Milost Global.

29.     In that capacity, Defendant Kuo is/was responsible for the overall investment strategy of the firm and oversees/oversaw the daily operations and strategy of all the firm's subsidiary and portfolio companies.

30.     Defendant Kuo is/was the President, Chairman of the Board, and Secretary of Milost Acquisition Corp.

31.     Defendant Kuo participated in numerous conversations with Dr. MacGregor wherein he and/or the other individual Defendants demanded money on behalf of Milost Acquisition Corp.

32.     Upon information and belief, Defendant Harold Martin resides in North Carolina.

33.     Defendant Martin is an attorney, and is and/or was the General Counsel or in-house Counsel of Milost Advisors and/or Milost Global.

## FACTS

34.     The individual Defendants are or were executives and/or directors of Milost Global and/or Milost Advisors.

35.     Between December 23, 2015 and January 27, 2017, Dr. MacGregor was the President & CEO of KGIC Inc. (formerly Loyalist Group LTD), a publicly traded company on the Toronto Venture Exchange, based in Toronto, Canada.

36.     During this period, KGIC was experiencing significant liquidity problems and needed to raise funds to recapitalize its operations.

37.     KGIC undertook a capital raise in May 2016 and announced its intention to raise further capital. The information was publicly available in press releases and filed with SEDAR, the official Canadian listing of securities filings.

38.     In August, 2016, KGIC also initiated a $20.2 million debt restructuring plan and financing proposal from some Canadian lenders. The plan was not accepted by some of the unsecured debtors.

39.     In or about August, 2016, Milost, a purported private equity firm, contacted Dr. MacGregor at KGIC with a proposal to provide funding through a friendly take-over bid.

40.     Milost initially proposed a $25 million funding and a buy-out using a U.S. OTC publicly traded company called PHI Global.

41.     Milost previously announced funding for PHI of $100 million. The announcement was published in Bloomberg, filed with the SEC, and was available at EDGAR.

42.     After multiple discussions with Dr. MacGregor and review of the then-current KGIC proposals, Milost offered an alternative proposal to Dr. MacGregor which would enable acquisition of KGIC's assets by a private company that would then be re-listed to trade on the U.S. OTC.

43.     An agreement, called "Milost Equity and Subscription Agreement" ("MESA") was entered into between KGIC/Dr. MacGregor and Milost for the funding to execute the transaction.

44.     The MESA was sent to Dr. MacGregor by Jerry Choate "on behalf of Egerton Forster."

45.     After execution of the MESA, Milost requested that Dr. MacGregor form a special purpose private company to acquire the assets as well as to purchase an existing U.S. OTC Form-10 Company (a "shell" company).

46.     The MESA, dated October 30, 2016, was signed by Defendant Forster and Dr. MacGregor.

47.     In this regard, Milost requested that Dr. MacGregor pay a retainer of $80,000.00 for its services in locating the Form-10 Company and facilitating the transactions.

48.     Dr. MacGregor paid Milost the retainer of $80,000.00.

49.     Dr. MacGregor paid an "engagement fee," pursuant to an invoice dated October 31, 2016, at the behest of Defendant Gwadiso.

50.     Dr. MacGregor also paid Milost a total of $410,000.00 to acquire the Form-10 Company.

51.     Dr. MacGregor also paid a $70,000 fee requested by Milost for an alleged "mandatory financial audit" of the Form-10 Company.

52.     Dr. MacGregor, at the behest of Defendant Gwadiso, paid a $30,000.00 "legal invoice," payable to Milost Advisors, by invoice dated October 31, 2016.

53.     The Form-10 Company identified by Milost is KMRB II Acquisition Corp, a shell company owned by Brian K. Kistler based in Florida.

54.     Despite numerous requests by Dr. MacGregor, Milost would not disclose the name of the Seller and attempted to misrepresent the value of the Form-10 Company by concealing the identity of the Seller.

55.     Milost informed MacGregor that the transaction, as requested by the "Seller", required:

   a.     MacGregor to pay $100,000.00 in advance.

   b.     The shares and the corporation would then be transferred to MacGregor and all documents would be sent to him by couriers.

   c.     Dr. MacGregor would then be required to pay an additional $150,000.00 upon the transfer of 100% of the shares of the shell company.

   d.     Finally, Dr. MacGregor would be required to pay an additional $70,000.00 to complete an audit.

56.     Dr. MacGregor paid the $80,000.00 retainer first, followed by the payments for the Form-10 Company.

57.     After paying the initial $80,000.00 retainer, Dr. MacGregor paid as follows:

      a.       $100,000.00 representing the first payment for the Form-10 shell company.

      b.       $150,000.00 representing the final payment for the Form-10 shell company.

      c.       $70,000.00 as payment to complete the financial audit of the Form-10 shell company.

58.     The total amount received by Milost from Dr. MacGregor (excluding any sums received pursuant to the earlier KGIC – Milost agreements) was $560,000.00.

59.     Upon payment of the first $100,000.00 for the Form-10 purchase, Milost sent to Dr. MacGregor, by email, what appeared to be stock certificates issued by Brian K. Kistler, the CEO and sole board member of the Form-10 shell company, KMRB.

60.     These stock certificates turned out to be fraudulent.

61.     Milost Acquisition Corp. was the entity that issued fraudulent, unsigned stock certificates, dated Dec 22, 2016 that were emailed to Dr. MacGregor.

62.     Defendant Kuo, through Milost Acquisition Corp., acquired KMRB Corp for $80,000.00.

63.     Because Dr. MacGregor had not received hard copies of any stock certificates or any authenticated documents of the Corporation, there was a delay in paying the balance of $150,000.00.

64.     In response to the delay, Milost, through Defendant Forster, demanded immediate payment upon threat that Milost would pay the $150,000.00 and "take back the stocks" from Dr. MacGregor.

65.     Dr. MacGregor paid the $150,000.00.

66.     Dr. MacGregor, then demanded the corporation documents and that the filing of change of ownership be properly reflected at SEDAR.

67.   Upon review of EDGAR filings with SEC under KMRB II, Milost, actually did the following as evidenced by the official information on EDGAR.

      a.   Milost used Dr. MacGregor's $100,000.00 to purchase a Form-10 Company-KMRB Acquisition Corp II and renamed it Milost Acquistion Corp.

      b.   The Form-10 Company cost only $80,000.00.

      c.   The initial stock certificates issued by email to Dr. MacGregor were bogus, and not reflected in any of the SEC filings.

      d.   Upon pressure from Dr. MacGregor, requesting a refund of all funds paid, and following numerous calls, Milost issued another bogus stock certificate to Dr. MacGregor of the Milost Acquisition Corp. stocks.

      e.   The stock certificates were unsigned, not filed, and not registered at EDGAR

68.   Dr. MacGregor has never received a legitimate transfer of the Form-10 company.

69.   Dr. MacGregor has never received evidence of any return for the $350,000.00 paid for the shell corporation.

70.   To date, Dr. MacGregor/KGIC has not received ownership of a Form-10 Company for which Milost collected at least $560,000.00.

71.   Dr. MacGregor requested a full refund of all monies paid to Milost.

72.   Dr. MacGregor has not been refunded any amount.

## COUNT I: VIOLATION OF 15 U.S. C. § 80b–7

73.   Plaintiff reavers and re-alleges the allegations set forth in Paragraphs 1 through 61 above, as though fully set forth herein.

74.   Defendants made material misstatements of fact and/or omitted material facts regarding or related to a filing with the Securities and Exchange Commission.

75.     Defendants willfully and knowingly made such material misstatements of fact and/or omitted material facts.

76.     Plaintiff has been damaged by Defendants' willful misstatements of material fact.

## COUNT II: WIRE FRAUD

77.     Plaintiff reavers and re-alleges the allegations set forth in Paragraphs 1 through 65 above, as though fully set forth herein.

78.     Defendants voluntarily and intentionally devised or participated in a scheme to defraud Plaintiff out of money.

79.     Defendants did so with the intent to defraud Plaintiff.

80.      It was reasonably foreseeable that interstate wire communications would be used, where Defendants sent their banking information and requested Plaintiff to transfer funds by wire.

81.     Interstate wire communications were in fact used, where Plaintiff remitted invoiced sums by wire, as directed by Defendants.

## COUNT III: COMMON LAW FRAUD

82.     Plaintiff reavers and re-alleges the allegations set forth in Paragraphs 1 through 70 above, as though fully set forth herein.

83.     Defendants made material false statements to Plaintiff, including, but not limited to, falsely inflating the sale price of the shell company and promises to deliver stock certificates and ownership of a shell company in exchange for money.

84.     Defendants made the material false representations with the knowledge that they were false.

85.     Defendants intended that their false statements would induce Plaintiff to pay them money.

86.     Plaintiff suffered damages based on his justifiable reliance on Defendants' materially false representations.

## COUNT IV: BREACH OF CONTRACT

87.     Plaintiff reavers and re-alleges the allegations set forth in Paragraphs 1 through 75 above, as though fully set forth herein.

88.     Plaintiff and Defendants were parties to a contract whereby Defendants would facilitate the purchase by Plaintiff of a shell company that would be used to restructure its debt.

89.     Defendants collected at least $560,000.00 from Plaintiff, based on the contract, toward that effort.

90.     In exchange for the money he paid pursuant to the contract, Plaintiff has received no valid stock certificates of a shell company.

91.     In exchange for the money he paid pursuant to the contract, Plaintiff has not received corporate documents transferring ownership of any shell company to him.

92.     Plaintiff has performed all duties assigned to him under the contract.

93.     Defendants have failed to perform their duties and obligations pursuant to the contract.

94.     Plaintiff has been damaged in an amount of $560,000.00 as a result of Defendants breach of contract.

## COUNT V: CONVERSION

95.     Plaintiff re-avers and re-alleges the allegations set forth in Paragraphs 1 through 83 above, as though fully set forth herein.

96.     The initial purchase price of the shell company paid by Plaintiff of $100,000.00 was $20,000.00 more than Defendants paid for the shell company.

97.    Defendants appropriated $20,000.00 of the purchase price of the shell company on the false premise that this money would go toward the purchase price.

98.    In exchange for the $560,000.00 paid by Plaintiff to Defendants, Plaintiff has received nothing of value.

## COUNT VI: CIVIL CONSPIRACY

99.    Plaintiff re-avers and re-alleges the allegations set forth in Paragraphs 1 through 88 above, as though fully set forth herein.

100.    Two or more of the individual Defendants agreed to act together with the intention of defrauding Dr. MacGregor.

101.    Defendants acted with the intention to accomplish a fraud with the purpose of harming Dr. MacGregor.

102.    As a result, Dr. MacGregor was damages in an amount of at least $560,000.00.

## JURY DEMAND

103.    Plaintiff hereby demands a jury trial of all claims.

**WHEREFORE** by reason of the foregoing, Plaintiff, DR. ALEXANDER MACGREGOR, respectfully requests that this Court enter Judgment in his favor, as follows:

    (a) Awarding Plaintiff damages in the amount of all moneys paid, i.e., $560,000.00, plus interest.

    (b) Awarding Plaintiff punitive damages.

    (c) Awarding Plaintiff all reasonable attorney's fees, litigation expenses, and costs.

DATED this **1**<sup>st</sup> day of **September**, 2017.

Respectfully Submitted,

**Law Offices of Nolan Klein, P.A.**
*Attorneys for Plaintiff*
347 West 36th Street, Suite 805
New York, New York 10018
Ph:      (646) 560-3230
Fax:    (877) 253-1691

By: */s/ Valerie K. Ferrier*
    VALERIE K. FERRIER**,** ESQ.
    (VF0209)
    ferrier@nklegal.com
    NOLAN KLEIN, ESQ.
    (NK4223)
    klein@nklegal.com
    amy@nklegal.com
    robin@nklegal.com