**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------- x
:
DR. ALEXANDER MACGREGOR,      :   Case No.: 1:17-CV-06691-LTS-KHP
:
      Plaintiff,     :   **Oral Argument Requested**
:
  v.                           :
:
MILOST GLOBAL, INC., and MILOST  :
ADVISORS, LLC,                :
:
      Defendants.    :
:
------------------------------------------------------- x

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR
MOTION TO DISMISS THE AMENDED COMPLAINT WITH PREJUDICE**

 

Christopher S. Hinton
THE HINTON LAW FIRM
275 Madison Avenue, 34th Floor
New York, New York 10016
Telephone: (646) 723-3377
Facsimile: (914) 530-2954
Email: chinton@hintonlegal.com

*Counsel for Defendants*

February 27, 2018

Plaintiff's opposition brief reaffirms that Plaintiff has no legal or factual support for his claims and that further amendment would be futile. Plaintiff's opposition simply has no legal support. And, in a brazen attempt to overcome insurmountable factual deficiencies, Defendant advances a new narrative. This narrative was not previously raised, and is not only inconsistent with numerous past and present allegations of Plaintiff, but also defies common sense. The Court need not, and should not, entertain Plaintiff's gamesmanship to plead around the standards for a motion to dismiss. Plaintiff's complaint should be dismissed with prejudice.

## ARGUMENT

### I. Defendants Were Not Provided Proper Process or Service of Process

The form of process used by Plaintiff failed to comply with Fed. R. Civ. P. 4(a), since the Summonses failed to name all of the parties. *Id.* 4(a)(1)(A); (Mem. In Support of Mot to Dismiss ("Dismissal Mem.") at pp. 4-7; 21-23.). The summonses were also not properly directed to the Defendants, *id.* 4(a)(1)(B) because Plaintiff either[1] named an incorrect entity that never had a relationship with Plaintiff, Delaware Milost, or misidentified the intended defendant, California Milost.[2] (Dismissal Mem. at p.4.)

Plaintiff also failed to provide sufficient service of process to California Milost or Milost Advisors, LLC. (Dismissal Mem. at pp. 5-7, 21-23.) Plaintiff does not address the insufficient service of California Milost. (*Id.* at pp. 21-23.)  In addressing the failure to provide service of process on Milost Advisors, Plaintiff misconstrues facts by asserting that "service on Jerry Choate" was proper because "Mr. Choate's own affidavit represents that he was the CEO of

---

[1] Shockingly, Plaintiff continues to refuse to identify the particular Milost Global that he is attempting to sue, and instead relies upon the legally flawed assertion that it does not matter since, according to Plaintiff, the two entities are alter-egos, a conclusion that is factually unsupported, and legally erroneous. (Dismissal Mem., at pp. 10-11.)

[2] The entity referred throughout the briefs as "California Milost" is legally named "Milost Global". (Decl. of Egerton Forster in Support of Motion to Dismiss Ex. A.) The summons does not list a "Milost Global" but instead names "Milost Global, Inc.," a Delaware entity with no relationship to Plaintiff and independent of California Milost. (*Supra;* (Decl. of Christopher S. Hinton in Support of Mot. to Dismiss ("Hinton Dismissal Decl."), Ex. A.).)

1

Milost Advisors." (Opp. Mem. at p. 7.) However, Plaintiff fails to disclose that, *at the time of service*, Mr. Choate was *no longer* an officer of Milost Advisors, and, in any event, was never authorized to receive service of process on Milost Advisors behalf. (Decl. of Jerry Choate in Support of Mot. to Dismiss ¶¶ 3, 8, 10-12.) Plaintiff fails to cite any case law that supports the proposition that service upon a former officer of an LLC is sufficient.[3]

Plaintiff wholly fails to address these deficiencies. (Mem. in Opp. to Mot. to Dismiss ("Opp. Mem."), at p.6.) Having tacitly admitted insufficient process, Plaintiff abandons his burden to provide proper process and blames Defendants for creating the "confusion." (*Id.*) and then requests an opportunity to correct service by either "effecting[ing] service on Defendants, or their counsel could simply agree to accept service on their behalf." (*Id.* at p. 7.) To be clear, Plaintiff does not assert such an arrangement was ever made, because he cannot.[4] And, it was not due to Defendants. Defendants put Plaintiff on notice of insufficient service of process no later than November 1, 2017. (Decl. of Christopher S. Hinton in Further Support of Mot. to Dismiss ("Hinton Reply Decl."), Ex. A at p. 4 ("Rule 11 Letter").) Yet, Plaintiff *never* requested that counsel to Defendants accept service on behalf of any of the Defendants. (Hinton Reply Decl. ¶ 1.) Moreover, Plaintiff did not attempt to engage in a conversation regarding the appropriate identifies of purported defendants so that deficiencies in the service and the summonses could be resolved. (*Id.* ¶ 2.)

Plaintiff was put on notice of the numerous deficiencies long before Defendants raised

---

[3] Plaintiff refers to Section I-B of its opposition brief to address that Milost Advisors LLC was also dissolved at the time of service. However, Section I-B refers to the amenability of a dissolved LLC to being sued or suing. This is a red herring. Such issue is irrelevant to the propriety of service of process. Simply because an LLC is dissolved, and may be amendable to suit, has no bearing on how to properly serve such an LLC. Notably, Plaintiff provides no case law on the issue despite his needing to meet the burden of demonstrating sufficient service of process.

[4] The case cited by Plaintiff affords him no favors. (Opp. Mem. at p.7.) In *Pablo Star Ltd. v. Welsh Gov't*, 170 F. Supp. 3d 597, 604 (S.D.N.Y. 2016), the Court held that there must be a "definite manifestation of agreement . . . that a special arrangement has been made" in order for the Court to recognize acceptance of service by agreement. The Court did not find that such standard had been met, and dismissed the complaint for lack of service.

2

the issue via their Motion to Dismiss.[5] Given Plaintiff's own disregard of the defects and insufficient service, dismissal without leave to correct is appropriate.[6]

## II.  Plaintiff Lacks Standing to Assert the Claims in the Amended Complaint

Plaintiff's lack of standing is an insurmountable obstacle for Plaintiff.[7] (Dismissal Mem. at pp. 7-14, 23-24.) Plaintiff is unable to demonstrate an injury-in-fact, *id.* at pp. 7-9, any legal rights or interest in the claims for relief, *id.* at pp. 11-14, or, as to both Delaware Milost and California Milost, that any such injury is traceable to either of them. (*Id.* at pp. 9-11.)

Plaintiff's opposition to Defendants' extensive arguments regarding standing lacks any factual or legal basis. (Opp. Mem. at pp. 1-6.) Ironically, Plaintiff relies upon the fact that he is the owner of the shell corporation. (*Id.* at p. 2.). This action was based upon the injury-in-fact of not receiving the shell corporation – which Plaintiff now concedes he has.

Plaintiff has not, and cannot, establish that he, in his personal capacity, has suffered an injury-in-fact, necessary for Article III standing, or is a party of interest to assert the alleged claims as required under Fed. R. Civ. P. 17(a). (Dismissal Mem. at pp. 11-14.) Without citing any supporting law, Plaintiff attempts to overcome this controlling deficiency, by asserting that he has suffered an injury-in-fact because "he [paid] significant amounts for something that has not been delivered" in the form of a "publicly traded shell company." (Opp. Mem. at p.3.)

Plaintiff's attempt to manipulate the judicial process through this contraption must be denied. At the outset, Plaintiff ignores the fact that any purported injury arises from contracts that he was not a party to in his personal capacity. Plaintiff tacitly acknowledges that the

---

[5] In the alternative, the Court should provide attorneys' fees to Defendant to compensate for their expenditure of resources in addressing an issue that Plaintiff chose to actively ignore until after-the-fact.
[6] Dismissal without an opportunity to correct is precisely what the Court did in *Pablo Star Ltd.*, 170 F. Supp. 3d at 604, the sole case cited by Plaintiff.
[7] Contrary to Plaintiff's assertion, Defendants do argue the lack of redressability is a further bar to Plaintiff. (*Cf.* Opp. Mem. at p.2n1 *with* Dismissal Mem. at pp. 9; (no injury-in-fact); 19-20 (declaratory judgment)).

Contracts govern the conduct giving rise to this action. (Dismissal Mem. at pp. 3 (noting the relevance of the "MESA"), 11-15 (the "Advisory Agreement" and the "MESA").) Plaintiff further tacitly concedes that he was not a party to either contract, since he was merely a signatory on behalf of entities that were parties. *Id.* Being a signatory is insufficient to provide him the necessary Article III Standing or compliance with Fed R. Civ. P. 17(a) either as a direct party or a beneficiary of a contract.

Ignoring the well-settled law, Plaintiff asserts that he has standing because "he . . . paid" for the purported subject of those agreements (the shell company) and certain invoices.[8] (Opp. Mem. at p.3.) Even if we were to assume such was pleaded,[9] it would be insufficient to grant Plaintiff standing because, among other things, he is still *not* a party to the contracts that govern the actions giving rise to the claims. (Dismissal Opp. at pp. 11-15, 24.) Merely making a payment in connection with a contract entered into between others does not provide the payer standing to sue over claims arising out of the contract (to which he was not a party). (*Id.*) Plaintiff cites no law in support of his proposition, and fails to address the well-settled law cited by Defendants. *Warth v. Seldin,* 422 US. 490, 499 (1975).[10]

---

[8] The invoices were each directed to a contracting party, not Plaintiff personally. (Dismissal Opp. at p. 13)
[9] Plaintiff fails to cite any paragraph in his Amended Complaint that actually alleges payments were made in his personal capacity or pursuant to contracts that were entered into for his personal benefit, and Defendants have failed to find such an allegation. Even if relevant, which it is not given the facts herein, a mere allegation that "Dr. MacGregor paid" is vague and certainly not sufficient to form a legal allegation concerning personal interest.
[10] The well-settled case law is voluminous. *See, e.g., Lee v. Marvel Enterprises, Inc.,* 765 F. Supp. 2d 440, 453–54 (S.D.N.Y. 2011), aff'd, 471 F. App'x 14 (2d Cir. 2012); *Monahan v. Pena,* No. 08 Civ. 2258 (JFB)(ARL), 2009 WL 2579085, at *3 (E.D.N.Y. 2009) (dismissing plaintiff's breach of contract action for lack of standing where the action was brought in the plaintiff's own name but he was "plainly not a party to that contractual agreement, and not an intended third-party beneficiary"); *In re Rent-Way Sec. Litig.,* 218 F.R.D. 101, 111 (W.D. Pa. 2003) (citing *In re Nat'l Paragon Corp.,* Civ. A. No. 87–4454, 1987 WL 27024 at *1 (E.D. Pa. Dec.1, 1987) ("the purpose behind this rule is to protect a defendant from a subsequent action by the party actually entitled to recover and to insure that the judgment will have its proper res judicata effect.").

### III.     Plaintiff Has Suffered No Injury-In-Fact[11]

Plaintiff's claims arise out of purported damages caused by not receiving certain contracted services and rights. In particular, Defendant asserts that he bargained for, but did not receive: (1) a shell company; (2) accounting services related to the shell company; (3) advisory services; (4) legal services. (Dismissal Mem. at pp. 8-9.) However, it is undeniable that Plaintiff received all of the benefits he bargained for, as he not only concedes such but relies upon such benefits as evidence to support his claims. (*Id.* at pp. 15-16; Opp. Mem. at p. 3 ("Milost Global transferred all shares in Milost Acquisition Corp. to Dr. MacGregor.")) Thus, it is no surprise that Plaintiff is unable to consistently set forth the purported injuries suffered. (Dismissal Mem. at pp. 8-9.) Having received the benefit of the bargain, Plaintiff has suffered no injury-in-fact.

Faced with the quandary of having suffered no injury-in-fact, as was made clear to him through Rule 11 Letters issued prior to his filing the Amended Complaint,[12] Plaintiff has materially altered the facts in his Amended Complaint in an effort to draft around his futile claims. In particular, Plaintiff asserts for the first time in his Amended Complaint that he bargained to receive not just a "shell company" but a "publicly traded shell company." (Opp. Mem. at p. 3) This historic revision was a necessity for Plaintiff since it was undeniable that he received a shell company, but not a "publicly traded shell company." *Id.* Plaintiff now rests the entirety of his claims on this historic revision.

---

[11] Although a requirement for Article III standing, Plaintiff's purported injury-in-fact necessarily implicates the sufficiency of the pleading of the entirety of his claims, as well as the futility of permitting a second amendment to the Complaint. Accordingly, this issue is presented both in the context of standing as well as whether Plaintiff has sufficiently pleaded the causes of action.

[12] Twenty-six days before Plaintiff filed his Amended Complaint, Defendants sent a Rule 11 letter concerning the significant deficiencies of Plaintiff's claims. (Hinton Reply Decl. Ex. A (Rule 11 Letter).) The letter explicitly set forth that Plaintiff received the benefit of the bargain. In particular, the letter states "the damages claimed are based on the purported failure to deliver . . . a shell corporation . . . ., a shell corporation was identified, acquired and TRANSFERRED to Plaintiff . . . Plaintiff has suffered no damage. . . ." (*Id.* at pp. 1-2.) The letter reiterated that "ownership and equity interests in the shell corporation were transferred [to] Plaintiff. (*Id.* at p.2.) In a section listing the Initial Complaint's deficiencies, the letter states "[p]laintiff has not been damaged – Plaintiff's damages arise from a purported failure to deliver a shell corporation . . . a shell corporation was delivered." (*Id.*)

Defendants do not wish to repeat the rules governing the consideration of a motion to dismiss. However, there are nuances to those rules not previously set forth that are of particular importance to this particular issue.[13] Whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). A complaint cannot simply leave "open the possibility that a plaintiff might later establish some 'set of [undisclosed] facts' to support recovery." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 561 (2007).[14]

A Court need *not* accept all allegations as true. As the Second Circuit has held, "[a] party's assertion of fact in a pleading is a judicial admission by which it normally is bound throughout the course of the proceeding." *Bellefonte Re Ins. Co. v. Argonaut Ins. Co.*, 757 F.2d 523, 528 (2d Cir. 1985); *see also Bakalar v. Vavra*, 619 F.3d 136, 151 (2d Cir. 2010). An amendment of a pleading "does not make [the prior pleading] any the less an admission of the party." *Andrews v. Metro N. Commuter R. Co.*, 882 F.2d 750, 707 (2d Cir. 1989).

As a result, where a "plaintiff blatantly changes his statement of the facts in order to respond to the defendant['s] motion to dismiss . . . [and] directly contradicts the facts set forth in his original complaint," the reviewing court is authorized "to accept the facts described in the

---

[13] The focus of this section is independent of Plaintiff's failure to satisfy Rule 9(b) (Dismissal Mem. at p. 14n18.).

[14] Plaintiff's alter-ego allegations run afoul of this proposition, made all the clearer by Plaintiff's Opp. Mem., at 5 which best summarizes Plaintiff's insufficient alter-ego allegations as being able to be "demonstrated by documents in Plaintiff's (and presumably, in Defendant's) possession." For having purported supporting evidence in hand, Plaintiff's alter-ego allegations are shockingly bare. Plaintiff has not sufficiently pleaded an alter-ego relationship between any of the entities. (Dismissal Mem. at pp. 10-11.) Plaintiff's newfound effort to further argue his position through briefing is equally unavailing. The mere sharing of a founder and, purportedly, office space, is simply not evidence of an alter-ego relationship between businesses with distinct incorporations, functions and officers, but is instead a not uncommon occurrence. Following Plaintiff's proposition, entire industries' structures would be upended, e.g., the common practice in the financial industry for advisory, banking, and brokerage services to be independent entities yet share common space, advertising resources and oversight, or the entirety of the mutual fund industry where the funds and managers of the funds are recognized as separate and distinct entities despite, again, sharing common oversight, common structural formations, office space, websites, etc. In this particular instance, the entry into distinct contracts with separate entities for separate purposes, in particular the Advisory Agreement and the MESA, actually evidences that no alter-ego relationship existed among any of the entities.

original complaint as true." *Colliton v. Cravath, Swaine & Morre LLP,* No. 08 CIV 0400 (NRB), 2008 WL 4386764, at *6 (S.D.N.Y. Sept. 24, 2008), *aff'd* 356 F. App x 535 (2d Cir. 2009).

The Court should disregard Plaintiff's fictions alleged in the Amended Complaint that the subject of the bargain was a "publicly traded shell company" rather than simply a "shell company," and accordingly find there is no injury-in-fact. Plaintiff's previous representations in his Initial Complaint, the inconsistencies within the Amended Complaint, and the realities of the nature of the business, all support only one conclusion – Plaintiff's allegation that he bargained for a publicly traded shell company are simply not plausible, and belie common sense. Because all of Plaintiff's claims emanate from this fictitious injury-in-fact, the Court can readily dispose of the claims as not only insufficiently pleaded, but futile to amend.

In the Initial Complaint, Plaintiff was specific that the benefit of the bargain was for a non-publicly traded shell. Most compelling is the allegation that the proposal giving rise to the purchase of the shell "would enable acquisition of KGIC's assets by a private company that would then be *re-listed* to trade on the U.S. OTC." (Initial Compl. ¶ 42.) This is a clear admission that the shell, when acquired, was *not* to be "publicly traded." In fact, the term "shell company" is used by Plaintiff approximately 15 times in his Initial Complaint. *Not once* therein does Plaintiff make any reference to a "publicly traded shell company" or a requirement that the shell be publicly traded. Moreover, the Initial Complaint asserts no claim for relief based upon not receiving a "publicly traded" shell or requests that Defendants cause the shell to be made public. (*Id.* ¶¶ 73-103.) Rather, the Initial Complaint arose from the allegation that Plaintiff had "not received . . . ownership of any shell company." (*Id.* ¶ 91.)[15]

---

[15] Defendants had already transferred control to Plaintiff prior to his filing of the Initial Complaint.

The Initial Complaint also clearly identifies the shell company that was the benefit of the bargain as KMRB II Acquisition Corp., ("hereafter KMRB")[16], and which, *infra*, Plaintiff knew was non-publicly traded. Plaintiff alleges that, pursuant to the MESA, Milost was to provide services "in locating the Form-10 Company." (*Id.* ¶ 47.) The "Form-10 Company identified by Milost is KMRB [ ], a shell company." (*Id.* ¶ 53.) Plaintiff made payments "to acquire the Form-10 Company" (*id.* ¶¶ 48, 50) and paid monies for an audit of "the Form-10 Company." (*Id.* ¶ 51.)

Furthermore, the Amended Complaint also supports that KMBR was the bargained for shell - a standard Form-10 shell.[17] KMRB was a Form-10 registered entity,[18] *supra*, so it could do precisely what Plaintiff desired ("sell shares in order to raise capital." (Amended Compl. ¶35.)). KMRB lacked assets or operations (*id.* ¶¶ 48-53), according to an audit report,[19] consistent with KMRB being a shell company.[20] Accordingly, even the Amended Complaint recognizes that KMRB is precisely the type of shell company that was bargained for.[21]

---

[16] KMRB was subsequently renamed "Milost Acquisition".

[17] A Form-10 Company is simply a company that has a registration statement to sell shares.

[18] https://www.sec.gov/Archives/edgar/data/1653882/000161781915000054/kmrb2_form10.htm
 (Form-10 Registration of KMRB) (last viewed 2/22/18); Courts routinely take judicial notice of filings made with the U.S. Securities and Exchange Commission in considering a motion to dismiss. *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) (judicial notice of SEC filings is proper).

[19] Plaintiff's reliance upon this audit report is entirely inconsistent with his claimed economic injury for failure to have received such an audit of the shell company, and affirms he can state no claim for said damages.

[20] A shell company is "[a]n incorporated company with no significant assets or operations, often formed to obtain financing before beginning actual business, or as a front tax evasion."
http://www.nasdaq.com/investing/glossary/s/shell-corporation (last viewed 2/22/18). (Hinton Reply Decl. Ex. B.) NASDAQ's definition is the practical recognition of the legal definition set forth in the Securities and Exchange Act of 1934. Section 17 CFR 240.12b-2 of the Exchange Act provides that "[t]he term shell company means a registrant . . . that has: (1) No or nominal operations; and (2) Either: (i) No or nominal assets; (ii) Assets consisting solely of cash and cash equivalents; or (iii) Assets consisting of any amount of cash and cash equivalents and nominal other assets." The Court can rely upon the Exchange Act as well as the NASDAQ definition. Courts routinely take judicial notice of definitions and statements from self-regulatory or regulatory entities such as NASDAQ. *Abely v. Aeterna Zentaris Inc.*, No. 12 CIV. 4711 PKC, 2013 WL 2399869, at *21 (S.D.N.Y. May 29, 2013) (judicial notice of an FDA definition that was available on its website because such definition was important in considering the basis of plaintiff's claims); *Virtual Countries, Inc. v. Republic of S. Africa*, 148 F. Supp. 2d 256, 267 (S.D.N.Y. 2001), aff'd, 300 F.3d 230 (2d Cir. 2002) (judicial notice of stock market condition based upon NASDAQ stock market); *King World Prods., Inc. v. Fin. News Network, Inc.*, 660 F. Supp. 1381, 1387 (S.D.N.Y.), aff'd sub nom. King World Prods., Inc. v. Fin. News Network, 834 F.2d 267 (2d Cir. 1987) ("judicial notice . . . [that a company's] stock is listed on NASDAQ and [ ] appears to be a viable company").

[21] The nature of a shell company makes specious Plaintiff's averments of fraud, e.g., Defendants' purported effort to hide the lack of internal value or assets of the shell company. (Amended Compl. ¶47.). Plaintiff's inconsistencies

Ultimately, Plaintiff received the benefit of the bargain - control of KMRB. (*Id.* ¶ 79.)

Plaintiff alleges, for the first time in the proceedings, in the Amended Complaint that he bargained for a "publicly traded" shell company. Not only is such a representation entirely inconsistent with his previous detailed allegations, and nowhere previously mentioned, the Amended Complaint evidences that such an assertion fails to pass the common-sense requirements applicable to considering a motion to dismiss. The Amended Complaint alleges that "Milost was to . . . purchase [a "shell company"] on behalf of [Plaintiff] with funds provided by him," (*id.* ¶¶ 33), and that Plaintiff "was to be the sole owner of the shell corporation, and to have total control of it." (I*d.* ¶ 36.) It is simply not plausible to acquire a "publicly traded shell company" in the manner that Plaintiff asserts because, by its nature, such a shell has substantial outstanding shareholders. Moreover, outstanding shareholders would prevent Plaintiff from being the "sole owner." (*Id.*) Also notable is Plaintiff's failure in his claim for Declaratory Judgment, first asserted in the Amended Complaint, to request that Defendants be ordered to take steps to make the shell public. Yet, Plaintiff makes such a request for relief in his opposition brief. (*Cf.* Amended Compl. ¶¶103-104 *with* Opp. Mem. at p.13).

Ultimately, Plaintiff's own conduct confirms that the benefit of the bargain was a ***non-*publicly traded shell company - *after*** Plaintiff learned of the shell's identity and that it was ***not*** publicly traded, he continued to make the overwhelming amount of payments to purchase the shell. (Initial Compl. ¶ 57, 59 (he received stock certificates of KMRB after the first $100,000 payment; thereafter he alleges to have made payments totaling $220,000) which is more than

---

cast serious doubt on his representations as a whole. (*Id.* ¶ 47 (alleging Plaintiff, a sophisticated businessman, was led to believe the shell would be worth millions, despite other allegations that confirm Plaintiff knew the shell had no assets along with the common sense implausibility of acquiring such an asset for a few hundred thousand dollars.).

50% of the $410,000 he claimed to have paid; Amended Compl. ¶ 59(b)-(d), 60 (same)) This act, alone, is sufficient to discount Plaintiff's newfound characterization of the benefit of the bargain.

The Court should disregard Plaintiff's newfound assertion that the subject of the bargain was a "publicly traded shell company" rather than simply a "shell company." His extensive prior allegations and conduct prove that the newfound assertion is precisely the type that the Court does not have to accept as true in determining the motion to dismiss.

### IV. Plaintiff Has Not and Cannot Sufficiently Plead Any Claims

Defendants have clearly and concisely established that Plaintiff has not, and cannot, sufficiently plead any claims. (Dismissal Mem. at pp. 14-21.) In an effort to overcome the futility of his claims, and disregarding the other bases for dismissal, Plaintiff now relies *entirely* upon his newfound assertion that the "shell company" bargained for was to be "publicly traded." This is simply unavailing. Plaintiff has failed to sufficiently plead any claim, and the complaint should be dismissed accordingly.

### CONCLUSION

The Court should dismiss the Amended Complaint in its entirety, with prejudice,[22] and should grant Defendants such other relief as the Court may deem just and proper.

Dated: New York, New York
February 27, 2018

Respectfully Submitted,

**THE HINTON LAW FIRM**

By: /s/ Christopher S. Hinton
Christopher S. Hinton

---

[22] For the reasons stated herein, and in the Dismissal Mem., further amending of the complaint would be futile. Not only can Plaintiff assert no set of facts or law that provide him with relief, but Plaintiff has long been aware of all of the deficiencies, *supra,* yet chose not to address them outside of, or within, the Amended Complaint (filed Nov. 27, 2017). Plaintiff should not be awarded yet a third attempt to amend having intentionally ignored the grounds for dismissal by refusing to address them until after expending the Court and Defendants' resources.

                                        275 Madison Avenue, 34th Floor
                                        New York, New York 10016
                                        Telephone: (646) 723-3377
                                        Facsimile: (914) 530-2954
                                        Email: chinton@hintonlegal.com

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

    I hereby certify that on February 27, 2018 I filed the foregoing Defendants' Reply Memorandum of Law in Support of Their Motion to Dismiss the Amended Complaint with Prejudice, electronically with the Clerk of the Court using the Court's CM/ECF system which sends notice and an electronic copy to all counsel of record.

                                                 /s/ Christopher S. Hinton

                                                  Christopher S. Hinton